Alright, so our last case of the morning is People v. Doolin, counsel for the appellant and the appellee. If you're ready, you may proceed. If you want to come forward and make sure you state your name. We've had a little bit of feedback too, so hopefully we've eliminated that. Thank you, no problem. May it please the court, my name is Rebecca Phipps and I represent Howard Doolin in this matter. And I'm going to be focusing today on argument one of Mr. Doolin's brief. And that's the argument asserting that his two convictions for felony murder must be vacated. Because those two convictions were predicated on a felony, aggravated battery with a firearm, that was not a proper predicate felony for felony murder. Now Howard Doolin was convicted of multiple charges for the events that occurred in the early morning hours of December 23rd, 2019. This included the two counts of felony murder, along with for the deaths of Kertisha Warner and Marceline Braggs, that were based upon the aggravated battery with a firearm for shooting Ms. Warner at close range three times in the legs. Now the fact is though that felony murder was not the appropriate subsection of first degree murder for these facts as to the deaths of these two women. In other words, the state's prosecutors, when they were first confronted with this case, made a choice. They made a charging decision about how to proceed and they chose to proceed with an untenable theory of murder that they could not sustain because they did not have a valid predicate felony upon which to base it. And now I think that I understand why the state's prosecutor made that choice when they were confronted with this case. I think that the state's prosecutor was thinking about this, you know, that this wasn't just a typical straightforward shooting murder. I think the state's prosecutor was thinking, but there's this weird, unique, intervening fact of the car chase and crash. And I think that he was likely flummoxed by that and thinking, well, wait, what's the proper way to charge this when there's this weird, unique, intervening factor? But that intervening fact of this shooting plus car chase and crash, that just speaks to the issue of causation and would just mean that that prosecutor would have had to explain a little bit more to the jury about causation in this case if it had presented any of the theories of first degree murder. But it wouldn't have prevented them from demonstrating to a jury that the actions were a contributing cause of the death of these two women. And causation is needed for all three forms of first degree murder. So this complicating factor, while I think that that's the reason why the state's prosecutor chose to charge it as subsection 3 felony murder, that intervening factor of the car chase did not morph these facts into felony murder. Felony murder, as a subsection of that statute, is not to be used as merely as a catch-all subsection any time a murder is committed in something other than the most straightforward way. That's not what felony murder is. It's not a catch-all. Felony murder has a specific purpose. Felony murder exists to hold people accountable for deaths that occur during the commission of some other forcible felony outside of a murderous act, outside of a felony with a murderous intent. So somebody who sets out to rob a store and in the course of that conduct somebody is killed can be held liable for murder under felony murder. But someone who sets out to shoot and kill someone and then does kill someone is not guilty of felony murder. So help me with, I'm going to mistake her name, not Ms. Warner. Ms. Braggs.  Yes. So help me understand, wouldn't the felony murder rule be applicable though because wasn't the initial act directed at Ms. Warner and then incidentally Ms. Braggs was killed? Absolutely. And that's the transfer of intent. And that wouldn't, that would be a common scenario upon which somebody could be charged with first-degree murder intentional or strong probability murder. In fact, that's written into the very statute itself. When somebody intentionally tries to kill someone and kills that person or another, they could be found guilty of first-degree murder. So the fact that there was two, you know, that this initial action, the shooting, was clearly directed at Ms. Warner. And then as a result of that conduct, Ms. Braggs incidentally died as well. Does not mean that there was therefore a separate and distinct intent or felonious purpose to kill Ms. Braggs. She was killed incidentally. And that is, that is, you know, the original act, the only intent. It does not fall within felony murder. I mean, just like your example of robbing the store and then accidentally someone showed up. Sure. And that's exactly, and that's exactly what I think that, you know, I think that as we're thinking through this, we all are starting to conflate a few different concepts that are at play here, including this idea of transfer of intent. But the fact is that, yes, if the original action here that Mr. Doolin were accused of was that he had set out to rob Ms. Warner and then this exact factual scenario played out, then yeah, that would be a case of felony murder. The problem here is looking back specifically at the predicate felony itself. The predicate felony itself was charged as aggravated battery with a firearm for shooting at Ms. Warner from feet away and striking her in the body three times. And that was an act done with no, the only intent that we could describe that as is an intent to kill. So the problem is if this, if the original act were a robbery, yeah, that's a different intent. That's something that, I guess I buy that as to Ms. Warner. But I'm trying, I understand your argument as to the murder doctrine and that. Yeah. But I'm having a more difficult time with the facts as it relates to Ms. Braggs. Sure. So, and I think that it's, I think that people be Schaefer, which I cited in my brief, which was a fourth district case where an individual shot through a door intending, thinking that his target was one person and incidentally shot and killed someone else. And the court there, they note that when cases talk about the merger doctrine and the intent to kill, they're not saying the intent that the predicate felony has to be with an intent to kill a specific person. Rather, the intent to kill is an unqualified phrase that negates felony murder. Where there is an intent to kill, period, there is no predicate felony. It doesn't say, so in other words, apply to this fact. It doesn't mean where there was no intent to kill Ms. Braggs, we could still charge felony murder. The question is, what was the original intent? Was it a murderous intent or not? The fact that the original intent was a murderous intent, as to Ms. Warner, is inopposite to the question of whether that could be a predicate felony for felony murder. The original intent was a murderous intent. Therefore, whoever died as a result, whether the intended victim or an incidental victim, is inopposite. The original intent was a murderous intent. Two people died as a result. So, counsel, there's a Fifth District case, People v. Tyler. It was not published. I don't know if that was cited in the briefs. Maybe it was. It's in my notes, in any event. It allows some felony murder convictions based on an aggravated battery with a firearm charge, an aggravated discharge. Because it found that those offenses weren't inherent in the felony murder convictions, and it cited the People v. McGee, which have held a felony murder conviction predicated on aggravated discharge, where a bystander was killed by a stray bullet. And so, if that can sustain a felony murder conviction in those types of situations, then how could it not as to this bribes victim? Yeah. I appreciate that question. I'm not familiar with Tyler, but I am familiar with McGee. And I understand your question completely. So, aggravated battery with a firearm can be a predicate felony for felony murder. I think it's just that, and as other cases will say, it has to be considered on a case-by-case basis. It's not as clear cut as, say, if the predicate felony were robbery or kidnapping, et cetera. So, there is a case, for example, People v. Boyd, which I think demonstrates this in an even clearer way. There, the predicate felony was also aggravated battery with a firearm. It might have been aggravated discharge with a firearm, but it's analogous for our purposes. And there, the court found that that was an appropriate predicate felony because they found that that particular aggravated discharge of a firearm was done with the explicit purpose to scare away the defendant's brother. The facts in that case were that it was from a distance. He shot, quote, wildly at the car with an intent to scare away his brother. That's very different from the facts that we have here, which were, you know, this aggravated battery from the facts we have appears to be nothing other than a murderous intent. So, Boyd, I think, is a good example of how, yes, sometimes aggravated battery or aggravated discharge with a firearm could be an appropriate predicate felony based on the facts. Now, the case people v. McGee that you cited, that one, I think, is a little bit murkier. And that's why I think a lot of courts, for example, the Fourth District and people v. Shaffer, would say the reasoning in McGee doesn't hold up. But we followed it in Tyler, apparently. Oh, yeah. Yeah, I'm not familiar with what the facts in Tyler were exactly. But I think that the problem with McGee, which was similar to another case, people v. Figueroa, is that that was a case where I believe it was a defendant shoots at rival gang members. Innocent bystander is struck. I think that was more or less the general factual basis for McGee and Figueroa. And those courts seem to say in their reasoning that when the defendant shot at a rival gang member, it had an intent to shoot that gang member, but that somehow when the bullet inadvertently struck a bystander, somehow there was a new intent that existed to strike that bystander. And that's wrong. That's not the way that the idea of intent works when we talk about murder. The intent to shoot person A means that the person from a legal perspective had the intent to shoot person B under this theory called transferred intent, not an actual factual intent that somehow arises. So same thing here, and I think the state tried to argue this in their response, that when Mr. Doolin first shot at Ms. Warner. Counsel, I'm going to have you wrap it up. Oh, sorry. I don't want to. I'll give your opposing counsel an extra minute or two. Sure, sure. Are there any additional questions? And you'll have time to worry about a lot of this later on. Sure, thank you. All right, counsel, if you want to approach and state your name, we'll give you an extra minute or two if we could. Okay. All right. Thank you. Good morning, Your Honors, counsel. May it please the Court, my name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. I'll also focus on the primary issue of the merger doctrine, though if there's time I might touch on a couple of other things. Your Honors have raised a lot of interesting points. The merger doctrine focuses on the acts of the defendant, right? It is saying that an act that is inherent in the predicate felony cannot be the same act that causes the felony murder. That, in a nutshell, is what the merger doctrine is saying. If that act is one and the same, you violated that principle. Most often we see this in cases of bad aim, like the Schaefer case. You shoot at one person, you commit a single act of shooting a weapon, someone else is killed. You cannot then use that same act of shooting at one individual and say, oh, well, I didn't intend to shoot this other person. That's not how it goes. That's just got to be under a murder theory, because we don't want to reduce the people's burden to prove intent. The facts of this case don't reduce that burden. We have a predicate felony of aggravated battery with a firearm. The Bush case, Illinois Supreme Court, Morgan, they've all said this is an acceptable predicate felony, but it has been taken on a case-by-case basis because there are so often times where the intent transfers, where you meant to shoot at one person, you get another. Drive-by shootings, it frequently happens in that context. If you do that, that would relieve the people's burden of proving intent. But how can it be as to Warner, the Warner victim? As to the Warner victim, it is not – first of all, it's a factual question as to what his intent was. There's case law that says if you fire a gun at someone, you intend to kill them, but it doesn't have to be that way. There can be other intents. The facts of this case show he drove up, called the victim over to his vehicle. As she crossed the street, he fired three times at her and he struck her in the legs three times. If he drives away, he's only committed aggravated battery and firing. She did not die from that single act of shooting her with those three shots. She returns to her vehicle. It's at this point that he sees the other individual in the vehicle and decides to chase them, and he chases them. It causes the accident. They both die from blunt force trauma. Do we know that, that that was the cause of death of Warner, or did she bleed out while she was – I believe that the record says they both died from blunt force trauma. It wasn't a bleed out. That's my recollection. And so – So you say that this is a clear-cut case as to Brax because of the accident? It's absolutely clear-cut. Your Honor is correct there because that's felony murder in a nutshell. Let's say, for example, and I'll come back to the first victim. Let's say that doesn't qualify under felony murder. You still committed aggravated battery with a firearm. That set in motion a series of acts, a course of conduct, which is precisely what felony murder is getting to. Counsel use armed robbery. You go commit an armed robbery. Somebody dies. That's a predicate felony. That's felony murder. A continuous course of conduct occurred where he saw that person in the car and thought, perhaps there's a witness, and I don't want them to have seen me commit this crime. So he chases them. That chase causes her death. So he's committed an act that is an aggravated battery with a firearm that directly led to Marceline Brax's death. That's felony murder. That conviction. And that's Bush. That's Boyd. That's every case that's ever handled it. And we make that argument in the brief that it's a continuous course of conduct. I think it was sort of similar to Peter's case, which was like an aggravated kidnapping. The victim got away from one of the co-defendants. They kidnapped her. They took her to a house. They assaulted her. The victim temporarily escaped. Then the co-defendant went and captured her again and then murdered her in a basement of a house. It was still felony murder based on a predicate felony. But the reason... That's an act of order.  I can answer the order directly. When we're looking at whether or not the merger doctrine has been violated and whether this is an act that is inherent in the offense itself, Bush and Morgan say, what evidence is proving the death? Is it the same evidence that caused one act, the initial predicate felony, that also caused the death? In this case, it is indisputably not. The three shots did not cause the death. We are not using that act as evidence to prove the death of either Braggs or Warner. I just didn't think the evidence was clear on that point, but I'll have to look at the record again. And I think it's not a mistake, but my recollection is that it was blunt force trauma to both of them. I do believe it was clear as to Braggs, but I don't... Certainly. I don't think it was clear as to Warner. But in any event, does it really matter? If you look at the Bush holding that, where the predicate felony's sole purpose is to effectuate an act of physical violence, contemplating death, I mean, shooting someone three times, why does that not meet that standard? I think it's what presents the really confusing uniqueness of this case. I've not found any similar case. And so I think what Bush is talking about is not conceiving of these facts when they say inherent in the offense because if you look at all the cases that have happened in this type of scenario, it's never been one similar to this. Sometimes you'll see cases where, you know, a defendant intended to shoot someone and then wounded them, and then they died later of something else. They discharge that with a foreseeable murder. So it's an unusual case. But what we have now is a conflict, right, between what Bush is saying and then what the test for determining this is. The test is very clear. Does the same evidence prove both? And here, it does not. Assuming that I'm correct and that Kertesha Warner died from blunt force trauma, which is my recollection, if that is true, the same evidence cannot prove the predicate and the felony murder. It is a unique case. What if it's not clear on the record, then? What if the evidence does not support the cause of death? Well, you have to view it in a light most favorable to the people. I'm almost certain the court report has it. If it's not, if she died because she bled out, it would have to be because she bled out. There could be no other reason. If she died for any other purpose other than bleeding out, felony murder stands. If she bled out, then I would say it's still the same injury, and I would concede to you that that's inherent. That is an act that is inherent in the offense. But if she didn't die from those gunshots, the test that's been established for decades is, does the same evidence prove the predicate and the felony murder? And it does not in this case. That is what's so unique and confounding about this problem. One of the other issues I did want to talk about was the, whether we can even argue this reasonable doubt issue. If you remember the procedural posture of this case, the defendant raised several issues in 2023. It came up on appeal. One of the issues determined, this court determined that there was not a sufficient fitness here to determine whether the defendant was fit. So there was a limited remand to the trial court solely for the purposes of determining whether or not the defendant was fit to stand trial. This court retained jurisdiction of the other three or four issues, which did not include reasonable doubt. This issue was not raised in the original 2023 appeal. And so after the court determined the defendant was fit, it should have come directly back to this court, which explicitly retained jurisdiction of the remaining issues, to be resolved. Because the case law is very clear. The law of the case doctrine says when a court orders a limited remand, an appeal from that remand must only include, a new appeal must only include facts that were developed from that purpose. So the court did a limited remand. They found the defendant fit. Judgment should have been rendered on the original appeal, but instead the defendant filed a new notice of appeal and raised this new reasonable doubt issue. This did not, this was not in the original briefing. Now there are some procedural mechanisms for doing that. Under Rule 361, the defendant could have filed a motion to supplement and add that case, but that was never done. That still hasn't been done. This court never made a ruling granting that request. And so we argue in our brief that that's forfeited. The defendant argued that that issue is not forfeited because you can't forfeit a reasonable doubt argument, but you can. I cited the Sanchez case and I think McNeil was another case where they both found the defendant forfeited a reasonable doubt challenge because they had not raised it either in their original brief or in a reply brief. And if Your Honors recall, we had all the briefing filed. We even had oral argument in this case in 2024. That issue was never raised. Now it can be considered maybe a harsh remedy, but the defendant's not foreclosed from raising it in the context of an ineffective assistant of appellate counsel. So there is also this secondary argument that this shouldn't, we shouldn't even be talking about reasonable doubt right now. So I just wanted to give Your Honors an opportunity to ask questions about that. If you have them. Is there a procedural mechanism in which the State could have filed a motion to strike this appeal right from the get-go? I did file a motion to strike that issue. In the very beginning of this case or was that filed later on in the briefing stages? So this case was filed, it transferred, I'm in the third district, it transferred from the fifth to the third, an extension I think had already even been filed by the fifth district before it came to our office. When I reviewed the briefs, I had handled this case initially two years ago and observable, this is a brand-new argument. So I filed it as soon as I read the brief, a motion just to strike that argument because the remaining issues I think pretty much encompassed what was already there. So as soon as I had notice and awareness of it, I filed that. We had that and that was taken with this case. Correct, yeah, and I kind of just realleged it in the brief just because I might have done additional case law research or something like that. But as you stated, we're allowed, I mean, motions to supplement and this is at our discretion. Absolutely, and that's why I went ahead and addressed the reasonable argument. But in the instance of preserving that argument, you know, if this goes to appeal, I want to make sure I did my diligence on that. Understood. Another thing, that brief we had to touch on, talking about Ms. Warner, counsel said in her reply brief that we didn't really argue the case as related specifically to Ms. Warner, but pages 10, 11, 14 of our brief, like the context of the entire brief is like that was a proper predicate for both of them and so perhaps we spent more time focusing on Ms. Bragg's, but I just want to make sure that that argument was preserved, so I want to direct your honors to that. One other thing I want to talk about that wasn't one of the issues, it was having to do with the Illinois Rule of Evidence 608. This had to do with defense counsel attacking the credibility of one of the state's witnesses before they testified. The Illinois Rule of Evidence 608 allows the state or allows a claimant to bolster another witness' credibility by testifying to that credibility. In this case, one of the investigating officers testified before the witness testified that he found him to be credible. This was the young man who was in the vehicle with Mr. Doolin when he went on this shooting spree on that night. The reason we think Rule 608 applies in this case, typically it requires some sort of a testimony first and then you can rehabilitate a witness. But what's unique about our Rule 608 is that it says that credibility bolstering, that evidence is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. Or otherwise has not been defined. And I would submit to you that or otherwise is when a counsel's full theory of a case, as illustrated repeatedly in his opening argument, is that this witness is not credible and is in fact involved in the shooting himself, you have put on trial this person's credibility. And I think or otherwise is a catch-all phrase that is meant to include that evidence. That's a rule of evidence. To its logical conclusion, then, in every single case where the defense attorney, which is most of them, says some of the state's witnesses you're going to find are not credible, would then open the door for, in every case, the state to be allowed to call a police officer who happened to interview them to say, yeah, they're telling the truth. I think that's what the Rule considers because that's why it exists, to bolster someone's credibility. We contend that the phrase or otherwise is that broad. I believe otherwise means any other scenario that we've not specifically enumerated here. Typically, it comes up where one witness has challenged another, and so you go back and you rebuild someone's credibility. But or otherwise, contemplate it. As said in Alberts v. Texas, Texas has an identical Rule 608 for credibility, word for word, Illinois. And they found that or otherwise specifically applies to a challenge in opening statements. Because in that case, a defense counsel challenged the witness's credibility in opening statements, and they found or otherwise allowed that rehabilitation testimony. See, it's the same situation here. This hasn't happened in Illinois yet. There have been exceptions following the Rule. The jury's instructed that opening statements are not evidence. Correct. And that's one of the questions that was presented, I believe, in the Alberts case. But the fact is you've laid it before the jury. You've set a whole theory of the case attacking this person's credibility. They try to do it through questioning in the case itself. You know, I'm trying to place the young man as one of the co-defendants that he was conspiring with his mother, et cetera. So you can make it a credibility determination by testifying, but part of it also, the second part of that argument is with the officer specifically, an officer just can't testify normally that someone is credible because of the fact that they're a police officer, right? Sometimes the courts look at that and say, you know, that's an improper use of state authority. But here, it was part of his investigative process. He was interviewing this individual to get evidence, collect as part of his investigation, and that informed the context of his investigation. So when they asked him about that, I don't think it was necessarily because of what happened in opening argument, but I think the fact that it happened in opening argument opened the door for the state to do that. And so the officer testified, look, I found him credible, and that's why I did X, Y, Z. And if there are no further questions, I see that I'm out of time. May I ask one other quick question here?  If you could briefly respond to this. I know you're out of time, but you conceded in your brief that it was deficient performance by defense counsel to not object to allowing this prior firearms conviction into evidence. And why was that not highly prejudicial? Well, I think it was just looking at the evidence in this case. There was overwhelming evidence that the defendant had done this. So it was getting to whether or not, you know, in the context of an ineffective assistance of counsel, you know, certainly it's prejudicial. Every time, that's why we have the rule that it's excluded. It's always prejudicial. It's to what extent. Is there a reasonable probability of a different result at trial? And I submitted to you in the brief that looking at all this evidence and what occurred, there is no reasonable probability of a different result, and that's why this Court should affirm. Thank you. To make the argument that the evidence was overwhelming, doesn't that depend on the fact that the state's witnesses were credible and the defendant was not? It came down to that. There were also admissions. This happened at the jailhouse phone call recordings when the defendant was basically instructing, I can't remember his girlfriend's name. He was trying to speak to her to go get a gun out of the vehicle and get rid of it, a gun that was used in the commission of this crime. He was referring to it, if I recall, as his brother's wallet. And she wasn't quite understanding and kind of got frustrated with her. And then she was, like, on the phone with him in real time, like, when she discovered the firearm and realized what was happening. And so part of the argument in the briefs was, like, this is all evidence showing a consciousness of guilt. And that's why if you're going to boil it down to a credibility determination, those statements made in that jailhouse phone call were sort of the nail in the coffin, so to speak. It's like he had no credibility. He was instructing her to go get a firearm and get rid of it, which I believe she did throw the gun away because she was in fear. You know, if he gets out of jail, I think DuBois mentioned something to that extent as well, that he might do something to them. So she got rid of the firearm and it wasn't recovered. If it boils down to credibility to determine overwhelming evidence, doesn't then that make the officer bolstering the credibility of the state star witness even more prejudicial? It could be prejudicial. It could. But under Rule 608, when you put the witness's credibility on trial, like the defense counsel did here, accusing him of committing the crime, that's what opened the door for it. So that was part of counsel's strategy. And in hindsight, that strategy just wasn't successful. We don't analyze whether or not that was a successful strategy. By that argument, aren't you precluding a defense attorney from ever in cross-examination of a state's witness, saying, isn't it true? You're lying. What you've said is not true. You prevent them from doing that because if they do that, then you get to bring in any officer who interviewed that witness and say, based on your training and experience, were they truthful? Yes, they were. I suppose there's a risk that that could happen, and obviously it would have to be something I think that would have to be looked at in a case-by-case basis because oftentimes there's not always going to be an officer that's going to be able to come in and say something like that. But I do agree. That would be an abuse of the rule, certainly. But the fact remains the language there. What else does it otherwise mean? What other way can you attack an individual's credibility if it's not through evidence that's presented at trial? It must be through argument because you attacked that credibility in front of the finder of fact. So it is, you know, it's an interesting situation. It's not occurred, at least in this context, but I would submit to you, what else does that mean? What other mechanism could you attack their credibility from if it's not in evidence, which is listed? It's got to be in argument or else it makes no sense to even include that language in the rule if it was only limited to evidence that was presented. So that's how I would respond to that question. All right. Thank you. Thank you, Your Honors. And people would ask that you affirm the defendant's conviction in seconds. Thank you. Counsel Provello? Thank you. I will address a few of the points that the State just made. First of all, going back to the predicate felony for the felony murder charges, the State says that the State's argument just now was suggesting that because of the fact that the gunshots didn't end up necessarily being the final and actual cause of death, that therefore this was not an act done with an intent to kill. But that is not how we define intent. It's not a backward-looking thing. It's not saying if you're shot actually, if your aim is spot on and you shoot and the person dies, therefore your intent was an intent to kill. Right? You can miss. You can – a person can survive. But that doesn't actually change the analysis of what a person's initial intent was. Here, I think you asked a question directed at that. The opposing counsel thinks that distinction is significant and has essentially conceded if the record establishes that Warner bled out, then you're correct. So what does the record indicate in that regard? What's the cause of death of Warner? Sure. My recollection also, I think, is similar to the State's, that I think the ultimate, let's say in the medical examiner's report, what the ultimate final cause of death was, I think that it was the internal injuries from the impact. However, when we're talking about the causation in the context of murder, Illinois does not require that the act be the but-for cause of the death. It requires that it be a contributing cause of the death. So the initial act, the shooting, was most certainly a contributing cause of everything that followed. The initial act, the shooting, was an act done with a murderous intent. The fact that, you know, I think that the State took pains just now to separate and to say, well, it was especially for Ms. Braggs, the shooting wasn't what killed her. The car crash was what killed her. Those were two separate things, and therefore, it's not about the aggravated battery to Ms. Warner. That's not the predicate that led to the death of Ms. Braggs. That was the car crash. Okay, but then that still is not a sustainable charge of felony murder, because felony murder, as charged in the indictment, was based on the predicate of the aggravated battery to Ms. Warner. That's what it says in the indictment. For the death of Ms. Braggs, the predicate was the aggravated battery to Ms. Warner. They didn't charge it with the predicate felony being the car chasing crash. I don't even know if they could have, because I don't know if that would be an independent forcible felony that could be charged as a predicate felony. So the State goes to pains to separate that in the context of Ms. Braggs and say the aggravated battery wasn't her cause of death, that wasn't the predicate. Well, then, okay, we certainly don't have felony murder appropriately charged in this instance for Ms. Braggs. So, unless there's any other questions about that specific, okay. I'll also address briefly, well, first of all, I also want to say how the State characterizes the test as laid out in People v. Bush and everything that came before it. The State says that it's just the same evidence test. There have been multiple ways that courts have expressed how we analyze the predicate felony. There's some courts that look at the same act, same evidence. There's the idea of the independent felonious purpose. There's the idea of an act intrinsic in the murder itself. People v. Bush expresses it as, was it an act of physical violence contemplating death? If so, it's not a proper predicate felony. So, it's not just a same act analysis. That's not the only way of analyzing this. There's been multiple ways of analyzing the merger doctrine. Some courts have looked at them as separate questions that People v. O'Neill kind of asked it in two separate ways and said we're going to analyze it in two separate ways. Other courts acknowledge that these tests kind of blend together and overlap. So, I would say that Bush expresses this as, was the predicate felony as charged an act that was a physical act of violence contemplating death. The answer here is yes, therefore, no predicate felony and no felony murder. I will also then address what the state's contention that we waived this issue. Again, I rely on the brief in response to their motion to strike, but I will just urge that if this court finds that this issue was waived, which again is a sufficiency of the evidence argument, I don't think it can be, but if it was, I would urge this case to consider this as a supplemental brief, which this court can do in the interest of judicial economy. This is an issue now that has been fully briefed by both sides. We are here today fully arguing it to this court, and it is in the interest of judicial economy. I urge you to take this issue in consideration rather than having it move to a post-conviction petition in the future. If there's no other questions, Your Honor, we just ask that you vacate those two convictions and remand for resentencing on the remaining counts. And as to issues two and three, we ask that you reverse and remand for a new trial. Thank you. Thank you, Counsel. All right, we will take this matter under advisement. We will issue a ruling in due course, and we will break for lunch.